May it please the Court, Parmjeet Randhawa for Petitioner. This case comes to the Court on a denial of asylum from Fiji. And the main threshold issue in the case is whether the IJ erred by excluding the violence inflicted by family members in consideration of whether the harm suffered rises to the level of persecution. This Court has held in the past that despite personal origins of a dispute, the harm can still rise to persecution. Then Blanco-Lopez in Gomez-Zabalas, a mischaracterization of persecution as individual violence was found to be error. And mischaracterizing persecution as guerrilla recruitment in Molina was found to be error. Can you tell me where in the record it appears that the IJ was relying on that factor? Yes. On page 59, in his decision, he mischaracterizes the harm as domestic dispute, stating that the only physical harm suffered was by family members. It has the tone of a domestic dispute. Further down on page 61, he notes that the Court does believe that the applicants had been discriminated, harassed, suffered name-calling and stone-throwing and the like, but that it went on for some period of time without any actual harm other than from their relatives. The only point that can be made by that statement is that he excluded that harm. The only physical harm, they suffered no physical harm other than by their relatives. Even within the BIA, under matter of S.A., in where an orthodox Islamic father was found to have persecuted his more liberal Muslim daughter, within their home, it was a father-daughter situation, persecution was found based on account of religion. That is matter of S.A. And it was June of 2000. I can't provide the Court with a full citation. Is that in your brief? It is not in my brief. It's a case I came across while preparing for order. You should, and in general should, submit such citations to us. There's a form in which you can do that. I wasn't aware of that, Your Honor. I will in the future. So in that the I.J.'s decision was grounded in an error of law, a misunderstanding that family-inflicted violence could not be considered in persecution, we find that we believe that his decision could not be supported by reasonable, substantial, and probative evidence from the record as a whole. He excluded the physical harm when making his decision. The physical harm is a substantial part of the evidence. And as such, it cannot be deemed supported by substantial evidence. The next issue at that point would be whether a reasonable fact-finder would be compelled to find persecution in this case. And based on the current case law that has come from this Court, the fruits have suffered harm greater than harm suffered in cases where compelling evidence was deemed to exist. Let me ask you something. If we agreed with you that the I.J. relied on this impermissible and fairly major factor, would that be sufficient reason to reverse right there? Yes. I mean, to deny that, to grant the petition, and then what? Send it back to decide it without that factor? I believe that the facts on the case can – that are in the record as they exist is enough for the Court to decide that he is eligible – that the perups are eligible for asylum as the record stands as a whole. If there's an error of law, the Court has the authority to review de novo. They can review all facts of the case. And we believe the facts of the case do substantiate a finding or qualify a compelling qualification. Do you think that if there's an error of law in the administrative decision that we then decide the case de novo on the facts? I believe an error of law allows you to review the facts and determine whether there was a – What authority do you have for that in light of Ventura and so on? Under – under Molina, Gomez-Ceballos, and Blanco-Lopez, all of which are in the record as a whole, and then they proceeded to – the Court then proceeded to evaluate the facts. Those pre- or post-Ventura cases? I'm sorry? Those pre- or post-Ventura cases? I am not aware of whether – of where they fall in the timeline. Go ahead. Okay. In the I.J.'s decision himself, he is unsure whether – even excluding the physical harm, he still says he's not sure whether it rises to the level of persecution. He doesn't know. It, for him, was a close call. And he advised the counsel – the claimants to stay in touch with their attorney. He advised the attorney on cases to look at for an appeal. I think he was asking – it seems he was asking the BIA for – for guidance. He wasn't sure without the physical violence. Which he didn't get. He just got a summary affirmance. Is that right? He just got an affirmance without opinion. If the judge did take into account the physical violence, he would have been compelled to find persecution. If he was wavering on it without the physical violence, the physical violence surely would have been a substantial effect on his decision. In prior cases, this Court has found compelling evidence in cases where there have been no actual violence from people where there's been one threat to a business based on economic reasons, followed by another threat to a life and there were reports from his family that people were looking for him. And that evidence was found to be compelling. In Molina, the applicant, an El Salvadorian applicant with guerrilla persecutors, received two threatening notes two years apart. And she had cousins, and her cousins' families were killed by guerrillas. There was no actual physical harm. And the evidence was found to be compelling. But nobody was killed here. Sorry? Nobody was killed here. Nobody was killed here. There were threats against their life. Nobody was seriously injured here. Nobody was seriously injured here. No one had lasting injuries or disfigurements or disabilities caused. There was physical violence by the family members and neighbors and strangers involved in these incidences. Mr. Farouk was confronted in town. He was beaten. He was abducted. He was taken to some other place. He was held for half a day. He was slapped, punched, held by two men, and a third man punched him in the face, and his life was threatened. The IJ found his testimony to be credible. The co-applicant was punched in the face at her parents' home. She was assaulted in her own marital home. And the assault was with such violence that a police officer was too afraid to intervene. Property was destroyed. She and her husband were both threatened again. And the police officer who was afraid to intervene had backup downstairs in the police car, didn't do anything. He stood back. He told her he could not help her. Quote, I cannot help you. From her testimony, she was found to be entirely credible. There are two cases that have come from this court where the applicant, the evidence was not found compelling. Nugulko was a Ukrainian case. Applicant feared the Communist Party. She was harassed and discriminated against. There was no physical violence. The court found it could have found persecution, but would not have been compelled to find persecution. That holding was also found in Kay Prasad, a case out of Fiji, persecuted by native Fijians. The applicant was detained at a police station for four to six hours. Here the applicant was detained, abducted, not even at a police station where there was a possibility of some kind of protection, but to some unknown private location. And he was held for half a day. In Prasad, the person, the applicant was questioned about support of the Labor Party. He was hit on the stomach and kicked from behind. But the court noted that there was no explicit threat made against him. There was no evidence of a continued interest after that detention. The case here, the applicants were repeatedly threatened. And they repeatedly threatened because of an interracial, interreligious marriage. They did suffer actual harm. And there was a continued interest, and it proceeded for the remaining ten months of their existence in Fiji. Thank you. May it please the court, my name is Jonathan Cohn, and I represent the Attorney General. Your Honors, the last time that petitioners were in Fiji, the worst that happened to them was their TV was broken, their car was dented, and they received some vague, unspecified threats that were never fulfilled. Under Negulco and Prasad, decisions of this court, that does not amount to persecution, and a reasonable fact finder would not be compelled to believe that petitioners have a well-founded fear of persecution upon their return to Fiji. You know, what happened to these people was constant and ongoing, is that not right? And sometimes lesser action, if it's constant and ongoing, eventually adds up to persecution. Your Honor, you're right that you can accumulate various acts, but the facts in this case are almost identical to what happened in Negulco, in which you did have repeated actions, but they were very minor, like in this one. You had insults, you had name-calling. But wait, but there was some physical violence here, and the I.J. did discount it on the ground that it was by family members, so what do we do with that? I agree with the first part, but not the second. You're right, there was one incident of physical violence. No, there was more than one. No, for each of them, there was just one. Oh, for each of them. Oh, I'm sorry. The one and one is two. Right. And the I.J. did not discount the physical violence in the fact that it was done by family members. He said, but these types of incidents went up to some point in time without any actual harm occurring to the applicants other than from their relatives, i.e., he recognizes that there was harm from their relatives. And the harm by the relatives, he notes, was minor harm that did not cause any physical injuries and did not require any medical treatment. But it was physical. You would be better off if you were upfront about what actually happened and argued from it instead of keeping to back off. There was physical violence. It may not have been physical violence that had hurt anybody in any permanent way, but there was physical violence. You said there wasn't physical violence. No, there was. There are two questions here. One was your physical violence. And I said, yes, there was one incident for each. In the early days, the relationship And discounted by the I.J. is because it was from their relatives, by their relatives. Well, that's the second point. I disagree with that assessment, Your Honor. The I.J. does not say that there's some sort of amnesty, some sort of exclusion of harm by family members. That's not the position of the I.J. It's never been the position of I.J.'s, the board, the government. There's no blanket amnesty. What does the sentence mean, then? What he's talking about, if you look at the opinion of the whole, is the degree of the persecution. He sets up the analysis on page 53, and he explains that there's basically a spectrum. It's a matter of degree. On the one hand, mere harassment. On the other hand, full-fledged persecution. And the issue is what happened here, not who did it. And what happened here, he says, was physical. Why, then, did he mention several times who did it? Pardon? Why, then, did he mention, whenever he mentioned the physical harm, who did it more than once? Well, he also mentioned that there's harm by the Muslim neighbors on page 55, and by friends on page 63. So it's not as if he only referred to the harm by family members. You're correct that there are a couple of stray comments where he inaccurately describes the harm by family members, but there's no holding by the I.J. that harm by family members is automatically excluded. Well, he makes kind of an offhand comment that, oh, this seems more like a domestic dispute. He's kind of got a mindset that this isn't that important when family members beat up on each other. I think he's taking into account all the circumstances, the facts of this case, Your Honor. It's not the mere facts by family members, but what the family members did in this case. And there's just a single incident of physical violence. Also, when you said all that happened to them when they got back when somebody threw their TV down, there was also – they also had stones thrown at them when they went out. Correct. Like in Negulco, you're right. There were stones thrown at them. There was name-calling. There was harassment. A police officer yelled at Mr. Farouk for parking his car incorrectly. But that does not amount to persecution or this Court's precedence. And the important question – Yelling doesn't, and stone-throwing might. In Negulco, there's stone-throwing, also harassment and insults, and two incidents of physical violence, pushing. Yet this Court held that a reasonable fact-finder would not be compelled to conclude that that amounts to persecution. And that's the same thing you have here. What happened is definitely unfortunate, it's regrettable, but it's not persecution. It's also important to remember, and this does not condone what happened at all, but what happened to the Farouks, however regrettable it is, is not something that's unique to the Farouks or unique to Fiji. It happens in other countries, in this country, in this country as well. You have family members who are unfortunately upset at children who engage in interracial or interreligious dating, but that is not persecution unless it arises to the level of persecution as established by this Court's precedence. We get a great number of cases out of Fiji which suggest that there's a lot of racial intolerance in that country. And I think that's a background and a backdrop to what's going on here. That's right, Your Honor. There's definitely racial and religious intolerance more there than here, more there than other countries. But this Court has made clear that racial discrimination does not amount to persecution. Again, you have that in the Prasad and the Ngulco case. It's a recurring theme. And I'm not trying to condone what happened in this case. What happened in this case definitely is regrettable and unfortunate. I'm just saying that all the various minor incidents don't amount to persecution. And if you remember, in this case, the Farouks returned voluntarily to Fiji after a very short stay in this country. Why? Because they knew it was safe. Those were Mrs. Farouk's words. Well, they said it. They hoped it would be safe. Actually, she said that she knew it would be safe, knew was her word, on page 166 to 167 of the record. But it didn't turn out to be the case, did it? I think it actually was, Your Honor, because after their return, the worst that happened was their TV was broken, their car was dented, and they received vague unspecified threats of harm. And they had stones thrown at them every time they went out. Well, not every time, many times. Yes. Like in the Ngulco, they had stones thrown at them, and that dented their car. But why do you keep not telling the whole story, and then we can't value what you're saying? I did say their car was dented by the stones. There were insults, there was harassment. And I agree what happened was unfortunate, but the question is whether a reasonable fact finder would be compelled to believe that this amounts to persecution. And under Persaud and Ngulco, I think that simply is not the case. Yes, you did have stones. You did have insults. A police officer yelled at Mr. Farouk for parking his car incorrectly. But you had no more physical violence. Their families knew where they lived. Their friends and neighbors knew where they lived. And there was no physical violence. And again What about these unspecified threats? It seems to me that that would be very concerning, and it can be persecution. No, Your Honor. You're right. It can be very disconcerting, and I agree what happened was unfortunate and regrettable. But under Arriaga-Barrientos, the decision of this Court, vague, unspecified, unfulfilled threats. But what exactly were the threats? In this case, they actually don't articulate what the threats were. This is vague threats of harm. Before they left for the United States the first time, there were more concrete threats. One was a threat by family members of, you know, you'll be lucky to get home alive. Friends said something similar. Those threats were more concrete, but those threats were made in June or July of 1992, right after they started dating, when emotions were running high by friends and family. Those threats were not the kind of threats that were made later, after they returned to Fiji. If you look at the record, the threats that were made after they returned to Fiji were vague and unspecified. It's unclear what was said. There's no quotation. There's just vague, unspecified threats of harm that were never fulfilled, just like in Arriaga-Barrientos. These threats by themselves are not persecution, either in isolation or in conjunction with the other minor incidents in this case. Again, you had some stone throwing, the car was dented, the TV was broken, but that's the worst that happened. This is like Lugulco. It's like Prasad. It's not persecution. Why, on what basis would we draw a line between what happened before and what happened after they came back, with regard to looking at the totality of the circumstances that led to their fear? It's not a blanket exclusion. I'm not saying you ignore completely what happened. But if you look at Singh, 134, F3rd, 962, and Hakeem, this Court has considered the fact that Petitioners voluntarily returned and returned without incident, returned safely. And that factors into the analysis. But they didn't return without incident. They had incidents. You're saying these incidents by themselves weren't persecution, but it wasn't without incident. Correct. It was without significant incident rising to the level of persecution. You know, this is unlike many cases we have where the people really want to be in America. These people wanted to be in their home country, and it was intolerable. We don't know that, Your Honor. We don't know why they want to be in this country. Maybe it's because it's intolerable. Maybe it's because they have better opportunities here. But even if it was just the ---- No, this isn't the case. Apparently, the economic opportunities were fine for this individual and his family in Fiji. It's not an economic case. Sure. Well, Your Honor, even if that is true, and the record is a little bit unclear as to why, the mere subjective fear of harm is insufficient under this Court's precedents and Elias Acarius. There has to be objective fear of harm as well. So they might want to be here because of what happened, but that by itself does not justify a grant of asylum. You point to the testimony of one of the Petitioners to the effect that she didn't think they would be harmed if they returned. She only testified to that. He did not, am I right? That's correct, Your Honor. And she did not purport to speak on his behalf either in that testimony. Is that correct, Your Honor? Yes. Okay. Thank you very much. Thank you for your argument. We appreciate the arguments. They were useful. And the case of Farooq v. Ashcroft is submitted. And we'll proceed to hear Amrik Singh v. Ashcroft. We have several Singh cases today, so we need to be clear about which we're doing.
judges: B. Fletcher, Leavy, Berzon